[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14242

_____

D.C. Docket No. 1:12-cv-23148-CMA


RICHARD O. RAMBARAN,

                                                          Petitioner-Appellee,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,

                                                          Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 9, 2016)

Before ED CARNES, Chief Judge, MARTIN, Circuit Judge, and WALTER,[*]
District Judge.

ED CARNES, Chief Judge:

_____

[*] Honorable Donald Walter, United States District Judge for the Western District of
Louisiana, sitting by designation.

Richard Rambaran is a Florida prisoner serving a life sentence after his convictions in 2008 for second degree murder, armed burglary of an occupied dwelling with battery, and trespass with battery but without a weapon. While his case was on direct appeal to Florida's Third District Court of Appeal, some district courts of appeal certified to the Florida Supreme Court questions or conflicts in decisions involving the standard jury instruction on the crime of manslaughter by act. That jury instruction had been given at Rambaran's trial because the crime of manslaughter by act is a lesser included offense of first and second degree murder. Rambaran's attorney did not raise on appeal any issue involving the instruction.

After the Third District Court of Appeal had affirmed Rambaran's convictions but one day before the mandate issued, the Florida Supreme Court held in another case that the same manslaughter by act jury instruction given in Rambaran's trial was not only error but fundamental error (meaning that no objection at trial was required to preserve it). After unsuccessfully seeking collateral relief in state court, Rambaran filed a petition for federal habeas relief, which the district court granted on the ground that appellate counsel had rendered ineffective assistance by failing to anticipate the Florida Supreme Court's decision on the jury instruction issue and raise it before the Third District Court of Appeal. This is the State of Florida's appeal from the district court's order granting habeas relief.

2

This is the question:  Is a state court's denial of an ineffective assistance claim unreasonable where that claim is based on counsel's failure to anticipate a change in the law?  The answer lies in our decisions holding that counsel is not required to anticipate changes in the law.

## I.

After Rambaran and his girlfriend Leeah Thurston broke up, he repeatedly threatened her with a knife and, on one occasion, beat her so badly she needed stitches.  They attempted to reconcile and when that failed, Rambaran approached Thurston's new boyfriend, Shay Williams, and threatened to kill him.  A passing police car prevented Rambaran from carrying out that threat.  Later the same night, he and a friend followed Williams, who was driving Thurston's car, and chased him at high speeds, with Rambaran shooting at him four or five times.  After Williams took refuge at a police station, Rambaran called Thurston and told her: "[Y]ou know what, I'm going to get you and I'm going to get him and I'm going to get your whole family and I'm going to put all of you in a body bag."  She hung up on him, but he continued calling her.

Thurston's cousin, Latoya Johnson, spent that night at Thurston's house.  Shortly before Thurston fell asleep, Rambaran called her and asked her which room she was sleeping in, but she refused to tell him.  Later in the night she was awakened by banging on the wall that her room shared with Johnson's room.  After

3

the banging got louder and she began to hear muffled screams, Thurston "peeked in" Johnson's room and saw Rambaran holding a pillow over her head, telling her to shut up.  Thurston ran back into her bedroom, locked the door, and called 911.  The police arrived, but it was too late.  By the time they got there, Rambaran had stabbed Johnson six times, twice in the back of her head and four times in the back of her neck. Three of the stab wounds were fatal.

## A.

The State charged Rambaran with first degree murder of Johnson, attempted felony murder of Thurston, armed burglary of a dwelling with assault or battery, and armed burglary of a conveyance with assault or battery.[1]  Rambaran's trial took place in April 2008.

As required by Florida law, the trial court instructed the jury on first degree murder and its lesser included offenses of second degree murder, manslaughter by act, and manslaughter by culpable negligence.  See State v. Weller, 590 So. 2d 923, 926 (Fla. 1991) ("The law requires that an instruction be given for any lesser offense all the elements of which are alleged in the accusatory pleadings and supported by the evidence adduced at trial.").  The court used Florida's then-applicable 2006 standard jury instructions for each of those offenses.  It instructed the jury that to find Rambaran guilty of second degree murder, "it is not necessary

---

[1] Several other charges were severed for a separate trial.  See State v. Rambaran, 975 So. 2d 519, 522 (Fla. 3d DCA 2008).

for the State to prove a defendant had an intent to cause death." It also instructed that manslaughter by act required the jury to find that "Rambaran intentionally caused the death of Latoya Johnson." And the trial court defined culpable negligence as "consciously doing an act or following a course of conduct that the defendant must have known or reasonably should have known was likely to cause death or great bodily injury." All in accord with the standard jury instructions at the time and all without objection from Rambaran.

The jury found Rambaran guilty of second degree murder (a lesser included offense of first degree murder), armed burglary of an occupied dwelling with battery, and trespass with battery and without a weapon (a lesser included offense of burglary of an occupied conveyance).[2] The court sentenced him to life for the murder, 30 years for the burglary, and 42 months for the trespass. He filed an appeal to the Third District Court of Appeal.

### B.

In February 2009, before Rambaran filed his initial brief in the Third District Court of Appeal, the First District Court of Appeal issued its decision in Montgomery v. State, 70 So. 3d 603, 604, 606–08 (Fla. 1st DCA 2009) (Montgomery I), holding that manslaughter by act does not require an intent to kill

---

[2] The jury also found Rambaran guilty of attempted felony murder with a deadly weapon, but the trial court entered a judgment of acquittal on that count.

and for that reason Florida's 2006 standard jury instruction on that crime improperly added an element. Adding an element to a crime being considered as a lesser included offense was, the court concluded, fundamental error.[3] Id. at 607–08. In the same opinion, the First District Court of Appeal certified to the Florida Supreme Court the question about whether the State was required to prove intent to kill in order to establish manslaughter by act.[4] Id. at 608. In May 2009 the Florida Supreme Court accepted jurisdiction to review Montgomery I. State v. Montgomery, 11 So. 3d 943 (Fla. 2009) (unpublished table decision).

About a month after the Florida Supreme Court accepted jurisdiction to decide the certified question, Rambaran's attorney filed his initial brief in the Third District Court of Appeal, raising two issues: (1) whether the trial court erred in denying his motion for a new trial on the murder and burglary counts because the verdicts were against the manifest weight of the evidence, and (2) whether the trial court erred in denying his motion for a mistrial based on the introduction of evidence that the court had previously ruled was inadmissible. He did not challenge any part of the 2006 standard jury instructions that were used at his trial.

---

[3] Florida's doctrine of fundamental error permits a court to review an issue that was not preserved in the trial court. State v. Delva, 575 So. 2d 643, 644–45 (Fla. 1991). Fundamental error occurs when the error "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Id.

[4] The Florida Supreme Court may, but is not required to, review decisions that "pass upon a question certified to be of great public importance" or that "are certified to be in direct conflict with decisions of other district courts of appeal." Fla. R. App. P. 9.030(a)(2)(A)(v)–(vi).

While Rambaran's direct appeal was pending, the Second District Court of Appeal weighed in on the propriety of the standard 2006 manslaughter by act instruction, holding in two cases that giving that instruction was not error.  See Zeigler v. State, 18 So. 3d 1239, 1245 (Fla. 2d DCA 2009); Nieves v. State, 22 So. 3d 691, 692 (Fla. 2d DCA 2009).  In both of those decisions the court certified to the Florida Supreme Court the conflict between its decisions and the First District Court of Appeal's decision in Montgomery I.  See  Zeigler, 18 So. 3d at 1245–56; Nieves, 22 So. 3d at 692.

In December 2009 the Third District Court of Appeal, which is the court that had Rambaran's appeal pending before it, held in another case that the standard 2006 manslaughter by act instruction was not fundamental error, meaning that an objection in the trial court was necessary to preserve the issue.  See Valdes-Pino v. State, 23 So. 3d 871, 872 (Fla. 3d DCA 2009).  It also certified to the Florida Supreme Court the conflict between that decision and the decision of the First District Court of Appeal in Montgomery I.  See Valdes-Pino, 23 So. 3d at 872.

On February 5, 2010, which was after the Second District Court of Appeal had held that giving the 2006 standard instruction was not error and the Third District Court of Appeal had held it was not fundamental error, Rambaran's attorney filed in the Third District Court of Appeal a reply brief that did not raise the issue.  In March 2010 the Third District Court of Appeal affirmed his

convictions.  Rambaran v. State, 30 So. 3d 506 (Fla. 3d DCA 2010) (unpublished table decision).

On April 8, 2010, only one day before the mandate issued in Rambaran's case, the Florida Supreme Court issued its decision in State v. Montgomery, 39 So. 3d 252, 259–60 (Fla. 2010) (Montgomery II), holding that giving Florida's 2006 standard instruction was fundamental error because it erroneously required the jury to find an intent to kill in order to convict on manslaughter by act.  The Florida Supreme Court did not address in its decision whether giving the standard manslaughter by culpable negligence instruction cured any error in the manslaughter by act instruction.  See id. at 256.

Rambaran's attorney had from April 9, 2010 until July 13, 2010 to move to recall the mandate, but he did not do so.  During that window of time, on June 2, 2010, the Third District held that giving the erroneous 2006 manslaughter by act instruction was not fundamental error if the trial court also instructed the jury on manslaughter by culpable negligence.  See Cubelo v. State, 41 So. 3d 263, 267–68 (Fla. 3d DCA 2010).

### C.

In May 2010 Rambaran filed a state habeas petition in the Third District Court of Appeal.  His petition presented one contention:  that he had received ineffective assistance of appellate counsel based on his attorney's failure to argue

8

on direct appeal that the use of the 2006 standard manslaughter instruction was fundamental error.  The Third District Court of Appeal denied his claim in a one-sentence order issued on October 22, 2010.  Rambaran v. State, 48 So. 3d 852 (Fla. 3d DCA 2010) (unpublished table decision).

In August 2012 Rambaran filed in federal district court a pro se 28 U.S.C. § 2254 petition for writ of habeas corpus, challenging the Third District Court of Appeal's October 22, 2010 denial of his state habeas petition.  He asserted a number of claims, among them his claim that appellate counsel had rendered ineffective assistance in failing to challenge the manslaughter by act jury instruction.

In February 2013, while Rambaran's § 2254 proceedings were ongoing, the Florida Supreme Court for the first time held in Haygood v. State, 109 So. 3d 735, 741 (Fla. 2013), that giving the erroneous manslaughter by act instruction was fundamental error even if the trial court had given the manslaughter by culpable negligence instruction.  Several months later, a magistrate judge recommended denying Rambaran's § 2254 petition.  Without addressing Haygood, the magistrate judge reasoned that Rambaran's jury had been instructed on manslaughter by culpable negligence in addition to manslaughter by act, making his case distinguishable from Montgomery II.

9

Rambaran objected to that recommendation, pointing out the Haygood decision.  The district court adopted the magistrate judge's recommendation with respect to Rambaran's other claims, but referred the case to the magistrate judge for further consideration in light of Haygood.  The magistrate judge appointed counsel for Rambaran, and that counsel filed a supplemental memorandum contending that because of his failure to raise the jury instruction issue Rambaran's appellate attorney had rendered ineffective assistance of counsel.

The magistrate judge issued a supplemental report recommending that the district court grant Rambaran's § 2254 petition.  Although he acknowledged that effective counsel is not required to anticipate a change in the law, the magistrate judge concluded that Rambaran's counsel's failure to anticipate the change in the law was ineffective assistance because raising the jury instruction claim could have kept Rambaran's appeal in the appellate "pipeline," which may have allowed him to obtain relief from the Florida Supreme Court later.[5]

The State objected to that recommendation, contending that the magistrate judge had failed to accord the state court decision the double deference required when reviewing a state court's denial of an ineffective assistance claim.  The

_____

[5] The Florida "pipeline" theory is one under which certain decisions announcing a new rule of law are applied retrospectively to all appellants whose appeals are not final at the time the new rule is announced.  See Mitchell v. Moore, 786 So. 2d 521, 530 n.8 (Fla. 2001).  The Third District Court of Appeal has recognized in dicta that in cases that were still in the pipeline at the time of the Haygood decision, the giving of the erroneous 2006 pattern instruction on manslaughter by act is reversible error, even though there was no objection in the trial court.  See De La Hoz v. Crews, 123 So. 3d 101, 104 & n.8 (Fla. 3d DCA 2013).

10

district court overruled that objection and adopted the supplemental report and recommendation, determining that Rambaran's appellate counsel performed deficiently because Florida courts had found "comparable failures of appellate counsel to be deficient." The court granted Rambaran's § 2254 petition, "conditioned upon the State of Florida affording him a new direct appeal with constitutionally adequate counsel within a reasonable period of time."

## II.

"When reviewing a district court's grant or denial of habeas relief, we review questions of law and mixed questions of law and fact <u>de</u> <u>novo</u>, and findings of fact for clear error." <u>Lynch v. Sec'y, Fla. Dep't of Corr.</u>, 776 F.3d 1209, 1217 (11th Cir. 2015) (quotation marks omitted). The Third District Court of Appeal summarily denied Rambaran's state habeas petition.[6] "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99, 131 S. Ct. 770, 784–85 (2011). We therefore presume

---

[6] Rambaran filed another state habeas petition raising the same ineffective assistance claim on March 18, 2013, over six months after he filed his § 2254 petition in the district court. The Third District Court of Appeal denied that petition on April 3, 2013. Rambaran contends that we should consider the reasonableness of that denial instead of reviewing the October 22, 2010 denial. It would not matter if we did. The result would be the same. Whether the state court's decision was reasonable depends on the clearly established federal law in existence at the time of the decision, <u>see</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000), and the relevant federal law did not change between October 22, 2010 and April 3, 2013.

that the Third District Court of Appeal's denial was on the merits, and we review it using the deferential standard set out in § 2254(d)(1).

Under that standard, a federal court may grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  "[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000).  Under § 2254(d)(1)'s "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Id. at 412–13, 120 S. Ct. at 1523.  Under § 2254(d)(1)'s "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413, 120 S. Ct. at 1523.

To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the

12

deficient performance prejudiced his defense.  See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland.") (quotation marks omitted).  Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688, 104 S. Ct. at 2064.  "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  Harrington, 562 U.S. at 105, 131 S. Ct. at 788 (quotation marks and citations omitted); see also Gissendaner v. Seaboldt, 735 F.3d 1311, 1323 (11th Cir. 2013) ("This double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.") (quotation marks and alteration omitted).  "If this standard is difficult to meet, that is because it was meant to be."  Harrington, 562 U.S. at 102, 131 S. Ct. at 786.

## III.

The district court granted Rambaran relief under § 2254 because it determined that even though he was not entitled to relief on the jury instruction issue under Florida law at the time of his direct appeal, a reasonable attorney in

13

Florida would have preserved the issue in light of the conflict certified between the First and Third District Courts of Appeal. In reaching that determination, the district court failed to apply the double deference standard mandated by § 2254 and Strickland. See Harrington, 562 U.S. at 105, 131 S. Ct. at 788. It should have evaluated the reasonableness of the state habeas court's denial of Rambaran's ineffective assistance claim but instead it bypassed that test and went straight to the reasonableness of appellate counsel's actions. See id.; Gissendaner, 735 F.3d at 1323.

The reason that the district court went down that erroneous path is that it viewed the requirements of § 2254(d)(1) and the Supreme Court's instructions in decisions such as Harrington as nothing more than an affirmative defense, which could be forfeited if not asserted by the State. And the State did not assert § 2254(d)(1) deference, the district court pointed out, until it objected to the magistrate judge's recommendation. In other words, unless the attorney for the State reminds the judge at the earliest opportunity that § 2254(d)(1) exists and ought to be followed, the judge is free to ignore its commands. But the requirements of § 2254(d)(1) are just that: requirements. A judge may not ignore them, a party cannot waive them.

The provision does provide, after all, that a § 2254 petition "shall not be granted with respect to any claim that was adjudicated on the merits . . . unless the

14

adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1) (emphasis added); see also White v. Woodall, 572 U.S. __, 134 S. Ct. 1697, 1701 (2014) (holding that the Sixth Circuit erred by "disregard[ing] the limitations of 28 U.S.C. § 2254(d) — a provision of law that some federal judges find too confining, but that all federal judges must obey") (emphases added); Cullen v. Pinholster, 563 U.S. 170, 183 n.3, 131 S. Ct. 1388, 1399 n.3 (2011) (criticizing the dissent for failing to "take seriously" the Antiterrorism and Effective Death Penalty Act's (AEDPA) "requirement that federal courts defer to state-court decisions") (emphasis added); Woodford v. Visciotti, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (noting that AEDPA's "highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt") (quotation marks omitted) (emphasis added).

The district court's error in disregarding the requirements of § 2254(d)(1) led it to skip the dispositive question of whether there was any "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), holding that appellate counsel provided ineffective assistance by failing to preserve an issue that was percolating in the courts at the time.

Rambaran concedes that the district court erred in failing to apply § 2254(d)(1) and decide whether a Supreme Court decision clearly established that appellate counsel's failure to raise the issue was ineffective assistance. He contends, however, that the erroneously reasoned result should be affirmed anyway because Jones v. Barnes, 463 U.S. 745, 103 S. Ct. 3308 (1983), and Smith v. Robbins, 528 U.S. 259, 120 S. Ct. 746 (2000), do clearly establish that appellate counsel's failure to raise the manslaughter by act jury instruction issue was outside "the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, 104 S. Ct. at 2065, and therefore amounted to ineffective assistance.

To the contrary, what Barnes held is that appellate counsel is not required to raise every nonfrivolous issue that a defendant wants raised "if counsel, as a matter of professional judgment, decides not to present those points." 463 U.S. at 751, 103 S. Ct. at 3312. Rambaran did not ask his appellate counsel to raise the manslaughter by act issue, and Barnes would not help him if he had. And what Robbins held is that California's procedure for permitting appellate counsel to withdraw from representation in a direct criminal appeal is constitutional. 528 U.S. at 283–84, 120 S. Ct. at 763. Rambaran's appellate counsel did not withdraw, and Robbins would not help him if counsel had. Neither Barnes nor Robbins held that appellate counsel performs deficiently by failing to anticipate a change in the law or raise an issue that turns out to be stronger than the issues he did raise.

16

Rambaran focuses on dicta from those two decisions.  First, there is this observation from <u>Barnes</u>:  "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review."  463 U.S. at 752, 103 S. Ct. at 3313.  While that observation is undoubtedly apt, it is not a holding that constitutes clearly established federal law under § 2254(d)(1).  Instead, the statement is dicta because it was not necessary to the result in <u>Barnes</u> which was, after all, the rejection of the ineffective assistance claim arising from counsel's refusal to raise an issue the defendant had wanted raised.  See <u>United States v. Kaley</u>, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (defining holdings as "the result of the case and those portions of the opinion necessary to that result by which we are bound") (quotation marks omitted).  And the Supreme Court has repeatedly reminded us that "clearly established law signifies the holdings, as opposed to the dicta, of this Court's decisions."  <u>Howes v. Fields</u>, 565 U.S. __, 132 S. Ct. 1181, 1187 (2012) (quotation marks omitted); <u>see also</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (same); <u>Williams</u>, 529 U.S. at 412, 120 S. Ct. at 1523 (same).

As to the <u>Robbins</u> decision, Rambaran points to the Supreme Court's quotation (in a parenthetical) of language from a Seventh Circuit opinion, which had stated that "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  528 U.S. at

288, 120 S. Ct. at 765 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

The Robbins case did not even involve a claim of ineffective assistance from an

attorney's failure to raise a particular issue on appeal, so the language Rambaran

relies on is dicta, not a holding.  While we do not "lightly cast aside" dicta from the

Supreme Court, Schwab v. Crosby, 451 F.3d 1308, 1325 (11th Cir. 2006)

(quotation marks omitted), we are bound by the Supreme Court's repeated

command that when applying § 2254(d)(1) we must look only to that Court's

actual holdings.  See Woods v. Donald, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015);

White v. Woodall, 572 U.S. __, 134 S. Ct. 1697, 1702 (2014); Yarborough v.

Alvarado, 541 U.S. 652, 660–61, 124 S. Ct. 2140, 2147 (2004).  And just as

Congress does not generally "hide elephants in mouseholes," Whitman v. Am.

Trucking Ass'ns, 531 U.S. 457, 468, 131 S. Ct. 903, 909–10 (2001), the Supreme

Court does not hide clearly established federal law in parenthetical quotations of

circuit courts' decisions.

In concluding that appellate counsel rendered ineffective assistance the

district court pointed to two cases in which a Florida intermediate appellate court

had concluded that counsel performed deficiently by failing to challenge the

manslaughter by act instruction on direct appeal.  See Mendenhall v. State, 82

So. 3d 1153, 1154–55 (Fla. 5th DCA 2012); Lopez v. State, 68 So. 3d 332, 335

(Fla. 5th DCA 2011).  But a state intermediate appellate court is not the United

18

States Supreme Court.  Only the decisions of the nation's highest court can clearly establish federal law for § 2254(d)(1) purposes.  See 28 U.S.C. § 2254(d)(1); Woods, 575 U.S. at __, 135 S. Ct. at 1376; White, 572 U.S. at __, 134 S. Ct. at 1702; Howes, 565 U.S. at __, 132 S. Ct. at 1187; Carey, 549 U.S. at 74, 127 S. Ct. at 653; Yarborough, 541 U.S. at 660–61, 124 S. Ct. at 2147; Williams, 529 U.S. at 412, 120 S. Ct. at 1523.  The district court should not have relied on state court decisions.

After this case was submitted to us, this Court issued a decision holding unreasonable under § 2254(d)(1) the decisions of state courts rejecting a claim that counsel had rendered ineffective assistance on appeal by not raising a meritorious issue based on a recent change in state law.  Overstreet v. Warden, 811 F.3d 1283, 1288 & n.5 (11th Cir. 2016).  That decision is distinguishable, however, because at the time that counsel filed his appellate brief there were two intermediate state appellate court decisions and one state supreme court decision that were directly on point and would have led to reversal of some of the convictions.  Id. at 1284–88. When he filed his opening brief counsel could and should have cited existing law that entitled his client to relief.

That was not the situation here.  Raising the manslaughter by act jury instruction issue in Rambaran's initial brief, reply brief, or supplemental brief would not have afforded him relief.  When he filed his initial brief in the Third

19

District Court of Appeal, only the First District Court of Appeal had invalidated the jury instruction.  See Montgomery I, 70 So. 3d at 603, 608.  By the time he filed his reply brief, the Third and the Second District Courts of Appeal had held, to the contrary, that the jury instruction was not erroneous.  See Valdes-Pino, 23 So. 3d at 871–72; Zeigler, 18 So. 3d at 1239, 1245.  The Florida Supreme Court did not issue Montgomery II, holding that giving the jury instruction was fundamentally erroneous, until after the Third District Court of Appeal had already affirmed Rambaran's convictions and sentences — specifically, one day before the mandate issued in his direct appeal.  See Montgomery II, 39 So. 3d at 252, 254, 257–60.

When counsel was filing his briefs, the law was at best unsettled.  And "[w]e have held many times that reasonably effective representation cannot and does not include a [r]equirement to make arguments based on predictions of how the law may develop."  Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (quotation marks omitted) (second alteration in original); Pitts v. Cook, 923 F.2d 1568, 1573–74 (11th Cir. 1991) (concluding that, although the Supreme Court had granted certiorari in Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), several weeks before the petitioner's trial, and a Batson-type claim was therefore available to trial counsel, counsel's failure to raise such a claim was not ineffective assistance because "an ordinary, reasonable lawyer may fail to recognize or to raise

20

an issue, even when the issue is available, yet still provide constitutionally effective assistance") (quotation marks omitted); Funchess v. Wainwright, 772 F.2d 683, 691 (11th Cir. 1985) ("The failure of counsel to anticipate that an otherwise valid jury instruction would later be deemed improper by the state judiciary does not constitute ineffective assistance of counsel."); Sullivan v. Wainwright, 695 F.2d 1306, 1309 (11th Cir. 1983) ("Counsel's failure to divine [a] judicial development . . . does not constitute ineffective assistance of counsel.").

Nor was counsel's failure to file a motion to recall the mandate unreasonable. The Montgomery II decision held only that the use of the standard manslaughter by act instruction was fundamental error. 39 So. 3d at 257–60. It said nothing about whether giving that instruction was fundamental error even if the jury was also instructed on manslaughter by culpable negligence. Appellate counsel may have reasonably concluded that Rambaran's case was distinguishable because that additional instruction was given. In fact, during the window of time in which Rambaran might have moved to recall the mandate, the Third District Court of Appeal made just that distinction in holding that giving the erroneous manslaughter by act instruction was not fundamental error if the trial court also instructed the jury on manslaughter by culpable negligence. See Cubelo, 41 So. 3d at 267–68. No holding of the Supreme Court clearly establishes that in order to perform within the "wide range of reasonable professional assistance," Strickland,

466 U.S. at 689, 104 S. Ct. at 2065, counsel must accurately predict how the law will turn out or hedge every bet in the hope of a favorable development.

**REVERSED.**