[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13757
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-14530-KAM


RAYMOND BRANNON,

Petitioner-Appellee,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 6, 2020)

Before BRANCH, LUCK, and FAY, Circuit Judges.

PER CURIAM:

The Secretary of the Florida Department of Corrections appeals the district court's grant of Raymond Brannon's 28 U.S.C. § 2254 petition for writ of habeas corpus. We reverse the district court's grant of Brannon's petition because the state court's adjudication of Brannon's claim was not unreasonable under § 2254(d).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *State Proceedings*

On September 28, 2012, the State of Florida charged Brannon with (1) resisting a law enforcement officer with violence, (2) battery on a law enforcement officer, and (3) willfully fleeing from a law enforcement officer while driving at high speed or with wanton disregard for the safety of persons or property in violation of section 316.1935(3)(a), Florida Statutes. In October 2013, the case proceeded to trial. At trial, the state presented testimony from three law enforcement officers—Deputies Adam Dean, David Chandler, and Bryan Klassen.

Dep. Dean testified that around midnight on September 1, 2012, he was dispatched to a disturbance at the "Shake Your Booty Club" at the intersection of 25th Avenue and 43rd Street in Gifford, Florida. The scene was chaotic when Dep. Dean arrived, with upwards of 100 people flooding the area and centered around a brown Jeep parked in the roadway. As Dep. Dean walked towards the Jeep, he saw Dep. Chandler approaching on foot from the opposite direction. Dep. Chandler appeared to be giving commands to Brannon, who had his back

2

towards Dep. Chandler and was walking towards the driver's seat of the Jeep. Brannon then got into the driver's seat, and Dep. Chandler reached inside towards him. Within seconds, Dep. Dean heard the Jeep's engine "racing." Brannon took off in the Jeep, and Dep. Chandler came out as the driver's side door was closing and hit him. The Jeep's tires "squealed as it pulled away," and it appeared to be going "as fast as it could go," with the engine "revving very loudly."

Brannon then drove into an empty lot on the northeast corner of the intersection and turned around to head south on 25th Avenue. As Brannon headed south, Dep. Dean and Dep. Chandler chased on foot and radioed his location. Cars were parked along the roadway, and people were running in all directions. Brannon turned west onto 42nd Place and passed Dep. Klassen, who was parked in the intersection facing east. To avoid hitting Dep. Klassen's car, Brannon had to briefly drive off the roadway and into a grassy area on the side of the road. Dep. Dean did not see Dep. Klassen turn around, but he later saw Dep. Klassen heading west. Dep. Klassen had to cautiously drive through a crowd of people to follow Brannon.

Dep. Chandler testified that he tried to make contact with Brannon when he arrived at the scene. Dep. Chandler told Brannon to stay put, but Brannon turned away from him and headed towards the Jeep. The Jeep's engine was running, and Brannon got into the driver's seat before Dep. Chandler reached him. Once Dep. Chandler got to the Jeep, he told Brannon multiple times to get out, but

3

Brannon instead shifted into gear and revved the motor. Brannon said "what for," "f**k this," and then floored it. Dep. Chandler reached in to grab Brannon's arm, but once Brannon took off, Dep. Chandler stepped back and got hit by the driver's side door. Brannon then went south on 25th Avenue and turned onto 42nd Place. Pedestrians were walking "all along both sides" of 25th Avenue as well as 42nd Place, including in Brannon's path. Brannon had to drive across the northwest corner of 25th Avenue and 42nd Place to avoid hitting pedestrians. Brannon was driving at a high rate of speed, and the Jeep's engine was revving high. Dep. Chandler ran back to his patrol car and saw that Dep. Klassen had turned around, turned on his lights and siren, and gone after Brannon.

Dep. Klassen testified that he approached the scene heading east on 42nd Place. He drove up to a stop sign at the intersection of 42nd Place and 25th Avenue and saw a brown Jeep heading towards him from the north on 25th Avenue. The Jeep was traveling at a high rate of speed and turned west onto 42nd Place. To avoid hitting Dep. Klassen and other people in the area, the Jeep had to drive onto a patch of grass. Once the Jeep turned onto 42nd Place, Dep. Klassen "immediately" made a U-turn and turned on his lights and siren. Dep. Klassen had to avoid people walking around.

By the time Dep. Klassen turned around, the Jeep was approximately at the intersection of 42nd Place and 26th Avenue (the next block over). Dep. Klassen

4

then followed the Jeep as it made a series of turns. Dep. Klassen saw the Jeep's taillights at each turn but eventually lost sight of them. The entire pursuit lasted approximately two and a half to three minutes. Dep. Klassen's lights and siren were on the entire time.

The speed limit in the area was about 30 to 35 miles an hour. Dep. Klassen was driving "between 40 and 50 miles an hour," only going above 50 miles an hour "maybe a couple times," but the Jeep was steadily outpacing him. The Jeep's driving pattern was reckless and erratic, "going around corners and going into other lanes." The closest Dep. Klassen got to the Jeep was "[p]robably five car lengths" or about 100 feet away. Dep. Klassen did not know if the dashboard camera in his car recorded any footage or if any footage was ever recovered.

The state rested after the deputies testified, and Brannon moved for judgment of acquittal on all three counts. The trial court granted the motion as to the battery count and otherwise denied it. Brannon did not present any evidence. The jury then returned a verdict finding Brannon guilty of resisting an officer without violence (a lesser-included offense of count one) and guilty as charged on count three for high speed or wanton fleeing.

After trial but before sentencing, Brannon's trial counsel—Edward Mosher— moved to withdraw. Mosher advised the trial court that he found video footage from

5

the deputies' dashboard cameras and asked that sentencing be continued so that the court could appoint conflict-free counsel.

On March 21, 2014, Brannon appeared for sentencing with new counsel. Brannon asked the trial court to review the video from Dep. Klassen's dashboard camera and compare it to Dep. Klassen's testimony at trial. The state interjected that it understood Brannon wanted to point out inconsistencies between the video and Dep. Klassen's testimony, but the state argued that Brannon was outside the window for filing a motion for new trial and suggested that Brannon's only remedy would be to seek postconviction relief for ineffective assistance of counsel based on Mosher's failure to present the video. Brannon agreed that it was too late to seek a new trial but argued that the video could serve to mitigate his sentence and that the court had discretion whether to sentence him as a habitual felony offender. The trial court recessed to watch the video and review Dep. Klassen's testimony.

Once the hearing resumed, the trial court said that it had watched the video "ten times" and asked the parties to clarify what the court "should be seeing." The court played the video again from the bench and admitted it as an exhibit. The state explained that, due to the narrow view of Dep. Klassen's dashboard camera, the Jeep was not clearly visible in the video and only the Jeep's headlights and taillights could be seen. Regardless, the state argued that the video was consistent with Dep. Klassen's testimony. The court asked Brannon to point out any inconsistencies, and

Brannon noted only that Dep. Klassen's lights and siren were not on in the video. Without addressing the impact of the video, the court designated Brannon a habitual felony offender and sentenced him to time served on the conviction for resisting an officer without violence and twenty-five years imprisonment on the conviction for high speed or wanton fleeing.

Brannon moved for postconviction relief under Florida Rule of Criminal Procedure 3.850, arguing in part that Mosher's failure to present Dep. Klassen's video at trial constituted ineffective assistance of counsel. Brannon argued that the video conflicted with Dep. Klassen's testimony with respect to how fast Dep. Klassen was driving and whether Brannon drove near pedestrians. As such, Brannon argued, Mosher's failure to present the video prejudiced him by "denying him his right to present material, exculpatory or impeachment evidence" and there was a reasonable probability that he would not have been convicted of high speed or wanton fleeing had the video been presented at trial. The state opposed the motion, arguing that the video was consistent with Dep. Klassen's testimony.

The state trial court summarily denied Brannon's postconviction motion because Brannon failed to establish prejudice under Strickland v. Washington, 466 U.S. 668 (1984). The court explained that it had reviewed the video and determined that it was not "exculpatory or impeaching evidence." Brannon appealed, and Florida's Fourth District Court of Appeal summarily affirmed without opinion.

*Federal Proceedings*

On November 30, 2016, Brannon filed a § 2254 petition for writ of habeas corpus in the Southern District of Florida. The petition claimed, in relevant part, that Mosher was ineffective for failing to present Dep. Klassen's video at trial. Again, Brannon maintained that the video contradicted Dep. Klassen's testimony in several respects. Responding to the petition, the Secretary of the Florida Department of Corrections argued that Dep. Klassen's testimony was consistent with the video.

A magistrate judge held an evidentiary hearing on Brannon's § 2254 petition. Mosher testified that he thought the video "clearly contradicted" Dep. Klassen's testimony. Mosher stated that he would have used the video to impeach Dep. Klassen at trial because the video showed that the Jeep's taillights were "faint" by the time Dep. Klassen activated his lights and siren. Mosher also stated that, contrary to Dep. Klassen's testimony that he was five car lengths away from the Jeep at one point, the video "clearly show[ed] that he was nowhere near . . . Brannon at any point." Brannon likewise testified that the video contradicted Dep. Klassen's testimony about how close he got to the Jeep. Brannon further testified that there were inconsistencies as to when Dep. Klassen activated his lights and siren and whether pedestrians were in the roadway.

Dep. Klassen testified about his interpretation of the video and explained to the magistrate judge at what point the video showed that his lights and siren had

8

been activated. He confirmed that he could not see any pedestrians in the video at the time he made the U-turn. Dep. Klassen identified a light in the video that he believed to be the Jeep's taillights and another car stopped at a stop sign that was between his patrol car and the Jeep. At 21 seconds into the video, Dep. Klassen estimated that he was five or six car lengths behind the other car and did not know the distance between that car and the Jeep. At 22 seconds, Dep. Klassen estimated that he was "probably at least 200 feet" from the Jeep. Dep. Klassen then conceded that he lost sight of the Jeep and could not see it again after he drove around the other car. Dep. Klassen testified that he activated his lights and siren after he completed the U-turn. Brannon asked Dep. Klassen whether, at any point in the video, he appeared to be five car lengths away from the Jeep, and Dep. Klassen said that "it looked to be further away."

The magistrate judge issued a report and recommendation concluding that Brannon's petition should be granted as to his ineffective assistance claim regarding Mosher's failure to present Dep. Klassen's video. The magistrate judge concluded that Mosher's failure to present the video was prejudicial because the video conflicted with Dep. Klassen's testimony in three "material respects":

> First, the dash-cam video conflict's [sic] with Deputy Klassen's trial testimony regarding the speed at which the Jeep was traveling. Second, dash-cam video does not confirm the presence of pedestrians. Lastly, the dash-cam video demonstrates that distance between Deputy Klassen patrol car, when the patrol car had activated its lights and sirens, and [Brannon's] Jeep, was much greater that Deputy Klassen stated at trial,

9

making it very unlikely that [Brannon] would be aware that he was willfully fleeing or eluding a patrol car with activated lights and sirens.

The magistrate judge included a detailed description of the video based on her

own viewing:

The video begins on September 1, 2012, at 00:55:54. [Id. at 55:54]. Deputy Klassen drives towards a stop-sign at a maximum speed of 30 mph. [Id.]. Several pedestrians are visible on the right at a cross street. [Id. at 55:51]. When he arrives at the stop sign, Deputy Klassen makes a U-turn. [Id. at 56:15]. No pedestrians are visible in the intersection. [Id.]. After the U-turn, his car proceeds forward, and the tail lights of a white car is visible at a stop sign at an intersection approximately two blocks ahead. [Id. at 56:18]. The tail lights of this car are clearly visible. [Id.]. There is a white light in the distance beyond the white car which, according to Deputy Klassen's hearing testimony, is [Brannon]'s jeep. [Id. at 56:22]. At that point, Deputy Klassen's emergency lights and sirens activate. [Id. at 56:18, 56:25].

   Next, Deputy Klassen drives towards the stop sign, reaching 47 mph for one second [Id. at 56:24], before slowing down. He drives around the white car stopped at the stop sign. [Id. at 56:27]. He turns right at the next stop sign. [Id. at 56:32]. There are no cars visible ahead. [Id. at 56:36]. He then makes a left, the road ahead is empty. [Id. at 56:41]. He reaches a speed of 54 mph for one second [Id. at 56:47], then slows again to make another turn. Deputy Klassen makes a right turn, there are no tail lights visible on the road ahead. [Id. at 56:55]. He speeds up to 47 mph for one second [Id. at 57:00], at which point he slows down to turn left, there is still no sign of another car ahead. [Id. at 57:05]. He reaches 46 mph [Id. at 57:08] and immediately decelerates to turn right. [Id. at 57:13]. He reaches 50 mph for one second before slowing down to 46, 41, and then 35 mph. [Id. at 57:22-57:24]. Several cars pass him on the left. [Id. at 57:26]. He turns left two times. [Id. at 56:28, 57:41]. He turns off his siren. [Id. at 57:56]. He turns left again. [Id. at 58:06]. He comes to a stop, with his lights still activated. [Id. at 58:32]. His speed remained under 40 mph, and mostly well below, during the last minute of the video. [Id. 57:25-58:32]. In addition, no cars are visible ahead when he make [sic] his last few turns. [Id.]. The video concludes.

10

The magistrate judge noted that Florida's Fourth District Court of Appeal had deemed similar facts insufficient to constitute high speed or wanton fleeing. The magistrate judge also found that Brannon's conviction was "not overwhelmingly supported by the record and relied exclusively on Deputy Klassen's trial testimony." Thus, the magistrate judge determined that the jury would likely not have convicted Brannon of high speed or wanton fleeing if it had watched Dep. Klassen's video.

The magistrate judge determined that the state court's finding that Dep. Klassen's video did not conflict with his testimony was erroneous and not entitled to a presumption of correctness under § 2254(e)(1). As such, the magistrate judge concluded that the state court's denial of Brannon's ineffective assistance claim was "an objectively unreasonable application of Strickland."

On September 16, 2019, the district court adopted the magistrate judge's report and recommendation. The district court concluded that, "[e]ven though Deputy Klassen testified that he could see [the Jeep] ahead of the white vehicle that was stopped at a stop sign, . . . based on the distance between [Dep. Klassen and the Jeep], and the existence of the intervening white vehicle, no reasonable jury could find, beyond a reasonable doubt, that [Brannon] knew that Deputy Klassen was in pursuit of him." Accordingly, the district court granted Brannon's petition and vacated his conviction and sentence for high speed or wanton fleeing.

The secretary appealed the district court's order.

11

**STANDARDS OF REVIEW**

In reviewing a district court's grant of a petition for writ of habeas corpus, "[t]he district court's factual findings are reviewed for clear error, while mixed questions of law and fact are reviewed de novo." McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005). "An ineffective assistance of counsel claim is a mixed question of law and fact subject to de novo review." Id.

Where, as here, the petition raises a claim that has already been adjudicated on the merits in state court, the district court may not grant the petition as to that claim unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A federal habeas court reviewing an unexplained state court decision on the merits should "look through" that decision to the last related state court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). Accordingly, because the Florida Fourth District Court of Appeal summarily affirmed the trial court's decision, our review must focus on the trial court's reasoning.

12

## DISCUSSION

### *The District Court's Consideration of New Evidence*

The secretary argues that the district court improperly expanded the record by considering "new evidence" that was not before the state court in violation of § 2254(d).   Specifically, the secretary argues that the district court erred in considering Dep. Klassen's video and his testimony at trial and at the federal evidentiary hearing. The secretary recognizes that he did not timely object to the district court's consideration of these pieces of evidence.  Nonetheless, the secretary argues that he is not precluded from raising this issue on appeal because § 2254(d)'s requirements "are not waivable."

The secretary is right that federal courts must limit their review under § 2254(d) to the state court's record.  The analysis under § 2254(d)(2) is explicitly based on "the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   And the Supreme Court has likewise held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).  As the Court noted, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."  Id. at 182–83.

13

The secretary is also right that § 2254(d)'s requirements are not waivable. Those requirements are not the secretary's to waive—they arise out of "Congress'[s] intent to channel prisoners' claims first to the state courts" and carry out Congress's "goal of promoting comity, finality, and federalism." See id. at 182, 185. They are plainly "mandatory." See id. at 184. "A judge may not ignore them, a party cannot waive them." Rambaran v. Sec'y, Dep't of Corrs., 821 F.3d 1325, 1332 (11th Cir. 2016); see also Langley v. Prince, 926 F.3d 145, 162 (5th Cir. 2019) (en banc) ("Every court of appeals to consider the question—including ours—has held a State's lawyers cannot waive or forfeit § 2254(d)'s standard.").

Thus, we agree with the secretary that the district court erred in considering evidence not in the state court's record. To be clear, Dep. Klassen's video and trial testimony were part of the state court's record. Dep. Klassen's trial testimony was part of the state postconviction record. And, as the secretary noted in response to Brannon's postconviction motion, the video was too. See DE 10-1 at 594 ("The video was moved into evidence by the State on March 21, 2014 [at the sentence hearing]. . . . The tape was admitted as State's exhibit 1 during the hearing and is presently in the clerk of court's possession."). Nevertheless, the magistrate judge also held an evidentiary hearing and heard testimony from several witnesses. The magistrate judge cited portions of that testimony in her report and recommendation.

14

And the district court similarly noted that it had conducted "a de novo review of the entire file and record."

That said, we need not remand for the district court to consider Brannon's claim anew. See, e.g., Reaves v. Sec'y, Fla. Dep't of Corrs., 872 F.3d 1137, 1152–60 (11th Cir. 2017) (addressing the merits of the petitioner's § 2254 claim even though the district court erroneously considered evidence that was not part of the state court's record when the state court adjudicated the petitioner's claim). Instead, we may make our own determination of whether Brannon satisfied § 2254(d). See id.; see also Whatley v. Warden, Ga. Diagnostic & Classification Ctr., 927 F.3d 1150, 1181–82 (11th Cir. 2019) ("[G]iven the District Court's [§ 2254(d)] procedural error, we would normally vacate its judgment granting the writ . . . and remand the case to the District Court with instructions. But because we have the same cold record as the District Court had before it, we will do the proper analysis ourselves.").

*Whether the State Court's Decision Was Unreasonable*

Brannon claimed that his trial counsel was ineffective for failing to introduce Dep. Klassen's video at trial. The state court summarily denied this claim because the state court concluded that Brannon failed to establish prejudice under Strickland. In doing so, the state court noted that the video could not serve as exculpatory or impeaching evidence because

15

[b]ased on the limited recording field of the dash-cam, and the point at which Deputy Klassen started his pursuit; the video cannot be used to rebut the facts observed and testified to by the Deputies Dean and Chandler who were on foot, and Deputy Klassen who was in the pursuit vehicle. The video does not, and cannot show persons or vehicles not in the recording field. However, the video does show that Deputy Klassen engaged his lights and siren during pursuit, and that pursuit speeds ranged from 40-54 mph in some of the straightaways.

Our task under § 2254(d) is not to assess whether we believe the state court's determination was "incorrect"; rather, the question is "whether that determination was unreasonable—a substantially higher threshold." Schiro v. Landrigan, 550 U.S. 465, 473 (2007). A state court's decision is reasonable "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." See Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "If this standard is difficult to meet, that is because it was meant to be." Id. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. at 102–03 (citation and quotation marks omitted). To obtain relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

16

Here, the state court's application of the <u>Strickland</u> prejudice standard was not unreasonable. Given its inherently limited field of view, the video cannot prove the absence of pedestrians or taillights that, while not visible in the video, may have been visible from a different perspective. Moreover, much of what the video shows corroborates Dep. Klassen's trial testimony. For example, Dep. Klassen testified that he was driving "between 40 and 50 miles an hour," only going above 50 miles an hour "maybe a couple times," and the video confirms the same. The video also corroborates Dep. Chandler's and Dep. Klassen's testimonies that Dep. Klassen activated his lights and siren after he turned around to follow Brannon. Similarly, the video corroborates Dep. Klassen's testimony about the route he took. Finally, the video confirms Dep. Klassen's testimony that he could see the Jeep's taillights.

Any conflicts between the video and Dep. Klassen's trial testimony were not sufficiently material to result in prejudice. For instance, Brannon makes much of the fact that the video shows Dep. Klassen did not turn on his lights and siren immediately as he was making his U-turn, contrary to what Dep. Klassen testified at trial. But the video shows that Dep. Klassen turned on his lights and siren only a few seconds after turning around. Brannon also emphasizes that the distance between the cars appears to be greater in the video than what Dep. Klassen testified at trial. However, the distances in the video can only be guessed with limited accuracy, so the video is hardly probative on that point. At most, then, these conflicts

17

could have had only a conceivable effect at trial, which simply isn't enough to establish prejudice under Strickland. See Harrington, 562 U.S. at 112 (holding that, to establish prejudice under Strickland, "[t]he likelihood of a different result must be substantial, not just conceivable"). Accordingly, we cannot say that no fairminded jurist would agree with the state court's conclusion that Brannon failed to establish prejudice under Strickland. See Mize v. Hall, 532 F.3d 1184, 1193–95 (11th Cir. 2008) (concluding that state court's denial of defendant's Brady claim was not unreasonable under § 2254(d) in part because the omitted impeachment evidence "contain[ed] all the major points from [the witness's] trial testimony" and "[t]he only difference whatsoever between the [evidence] and [the witness's] trial testimony [was] relatively minor"); Brown v. Head, 272 F.3d 1308, 1311–15 (11th Cir. 2001) (concluding that state court's denial of ineffective assistance claim was not unreasonable under § 2254(d) in part because "much" of the omitted impeachment evidence "[did] not actually contradict" the witnesses' testimonies and therefore had "limited effect").

## CONCLUSION

The district court erred in considering evidence not before the state court in making its determination under § 2254(d). Nevertheless, based on our own review of the state court's record, the state court's conclusion that Mosher's deficient performance in not introducing the video did not prejudice Brannon was not an

unreasonable application of <u>Strickland</u>.  As such, we reverse the district court's grant of Brannon's § 2254 petition and remand for the district court to deny the petition.

**REVERSED AND REMANDED with instructions.**