[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13722
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-21145-CMA


DAVIS DORVIL,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 19, 2016)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Petitioner Davis Dorvil, a Florida prisoner convicted of second-degree murder who proceeds with counsel, appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. On appeal, Petitioner argues that his appellate counsel was ineffective because counsel failed to argue on appeal that the state trial court committed fundamental error when it instructed the jury that the lesser-included offense of manslaughter included as an element a showing of intent. After careful review, we affirm.

## I. BACKGROUND

### A.    State Criminal Conviction and Post-Conviction Proceedings

In 2004, the State of Florida charged Petitioner in an information with one count of second-degree murder for the shooting and killing of his wife, Herminous Dorvil, in violation of Fla. Stat. §§ 782.04(2), 775.087. According to the magistrate judge's summary of the evidence, Petitioner had been engaged in a heated argument with his wife and was heard telling her that she had "two strikes." Seconds before a gunshot was heard, Petitioner yelled at his wife that he didn't care if he went to jail. The gunshot was fired in the head of his wife.

Even though Petitioner was a trained paramedic, he rendered no medical assistance to his wife nor did he call 911. Instead, he left the residence and was spotted talking "nonchalantly" on his cellular phone as he walked away from the house. At some point during his walk, he buried the gun.

2

When police and paramedics arrived at the scene, they discovered that Petitioner's wife had sustained a penetrating gunshot wound to the head, with the gun having been fired at close range between 4-8 inches from her head. Petitioner's wife subsequently died and Petitioner turned himself into police within two hours of the shooting.

The second-degree murder case against Petitioner went to trial in December 2006. At the request of the State, and with no objection from Petitioner, the trial court instructed the jury on the lesser-included offense of manslaughter, in addition to an instruction on the charged second-degree murder count.

At trial, Petitioner testified, and his counsel argued, that he shot his wife by accident, and thus was guilty of no crime. Unsurprisingly, the State argued that the shooting was no accident and that the jury should find Petitioner guilty of second-degree murder. Specifically, the prosecutor first explained to the jury that the lesser-included offense of manslaughter required a showing that the Petitioner had been culpably negligent when he shot his wife. But the prosecutor argued that Petitioner's conduct in shooting his wife constituted much more than negligence. Instead, the prosecutor urged the jury to find Petitioner guilty of the more serious offense of second-degree murder, noting that Petitioner's conduct met all of the elements of second-degree murder and that the court would instruct the jury that it had an obligation to convict Petitioner of the most serious offense proven beyond a

3

reasonable doubt, which was second-degree murder.  The prosecutor further went over the verdict form with the jury, urging the latter to check off the box for "second-degree murder."

In response, defense counsel made clear that it was not seeking a conviction on the lesser-included manslaughter offense, but instead wanted an outright acquittal:  "Again, as far as the state attorney wanting to have a lesser offense.  We don't want that.  Mr. Dorvil was involved in a terrible accident.  A-c-c-i-d-e-n-t. That's what it was."

The trial court gave an instruction on both the charged offense of second-degree murder and its lesser-included manslaughter iteration.  The court instructed the jury that in order to find Petitioner guilty of second-degree murder, the State had to prove beyond a reasonable doubt that:  (1) "Herminous Dorvil is dead"; (2) "the death was caused by the criminal act of" Petitioner; and (3) "there was an unlawful killing of Herminous Dorvil by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life."  As to the lesser-included offense of manslaughter, the court instructed the jury that it could find Petitioner guilty of that offense if the State proved beyond a reasonable doubt that:  (1) "Herminous Dorvil is dead" and (2) Petitioner "intentionally caused the death of Herminous Dorvil and/or the death of Heminous Dorvil was caused by the culpable negligence of" Petitioner.  The trial court explained that culpable

4

negligence meant "gross and flagrant" negligence, which demonstrated a reckless disregard for human life or the safety of others.

The jury found Petitioner guilty of second-degree murder, specifically finding that Defendant discharged a firearm causing great bodily harm during the commission of this crime. The trial court sentenced Petitioner to life imprisonment.

Petitioner appealed to the Florida Third District Court of Appeal ("Third District") and filed his brief on January 28, 2008, asserting two errors: the trial court's denial of his motion to suppress and its consideration of Petitioner's refusal to accept responsibility in determining his sentence. On November 19, 2008, the Third District affirmed the conviction, finding no error in the trial court's refusal to suppress the murder weapon. It, however, reversed the sentence, concluding that the trial court should not have considered Petitioner's refusal to accept responsibility in making its sentencing decision. The state appellate court therefore remanded the case to the trial court to resentence Petitioner without consideration of that fact. *See Dorvil v. State of Florida*, 997 So. 2d 1138 (Fla. 3d DCA 2008). At resentencing, the trial court again sentenced Petitioner to life imprisonment.

On November 16, 2009, shortly after he had been resentenced to life imprisonment, Petitioner filed a second notice of appeal with the Third District

5

Court of Appeal.  In July 2010, however, his appellate attorney moved to withdraw as counsel under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Herzig*, 208 So. 2d 619 (Fla. 1968), which caselaw sanctions such a motion when there are no issues of arguable merit.  On December 22, 2010, the Third District issued a *per curiam* affirmance.  *Dorvil v. State*, 50 So. 3d 1146 (Fla. 3d DCA 2010) (Table).

A few weeks later, in January 2011, Petitioner filed a state petition for a writ of habeas corpus, arguing that his appellate counsel had rendered ineffective assistance by not arguing that the trial court committed a fundamental error when it instructed the jury that the State must prove intent to kill in order for the jury to find Petitioner guilty of manslaughter.  As a remedy, he requested permission to file a belated appeal.  He acknowledged that, at the time of his trial, the Florida Supreme Court had not yet issued *State v. Montgomery*, 39 So. 3d 252 (Fla. 2010), which held that the manslaughter-by-act instruction (which was given at Petitioner's trial) was erroneous because it required a showing of intent, and moreover the error was a fundamental error.  Nevertheless, he noted that another Florida appellate court (albeit not the appellate court overseeing his appeal) had determined by the time he filed his first appeal challenging his conviction that this jury instruction was fundamental error.  The Third District summarily denied

6

Petitioner's state habeas corpus petition. *Dorvil v. State*, 75 So. 3d 285 (Fla. 3d DCA 2011) (Table).[1]

### B.    Federal Habeas Petition

Thereafter, in 2013, Petitioner filed a *pro se* § 2254 petition in federal district court. As relevant to this appeal, Petitioner asserted that his appellate counsel was ineffective for failing to argue that the manslaughter-by-act instruction given to the jury by the trial court [also referred to as "the 2006 instruction" or "the 2006 manslaughter-by-act instruction"] constituted fundamental error. He reiterated the point made in his state habeas petition: that although the Florida Supreme Court had admittedly not yet declared that the manslaughter-by-act instruction constituted fundamental error at the time of Petitioner's first direct appeal, there was a split among the Florida appellate courts as to whether that instruction constituted fundamental error.

A magistrate judge issued a report and recommendation ("R&R"), recommending denying Petitioner's claim. Because no Florida court had disapproved of the standard manslaughter jury instruction at the time of Petitioner's trial, the magistrate judge found that Petitioner's appellate counsel was

---

[1] On February 8, 2012, Petitioner also filed a state petition for post-conviction relief under Florida Rule of Appellate Procedure 3.850, raising three claims for relief not relevant to the present appeal. The trial court denied the petition, and the mandate for the Third District's affirmance issued on December 3, 2012. *Dorvil v. State*, 100 So. 3d 702 (Fla. 3d DCA 2012) (Table).

not ineffective for failing to challenge the manslaughter-by-act instruction in the first direct appeal, briefed in 2008. Moreover, although *Montgomery* was issued in April 2010—after Petitioner's resentencing hearing and two months before his appellate counsel filed an *Anders* brief in July 2010—during the pendency of Petitioner's second appeal following his re-sentencing, Florida appellate courts had held that the erroneous 2006 manslaughter-by-act instruction was cured if a trial court had also instructed the jury on manslaughter-by-culpable-negligence, which the trial court had done at Petitioner's trial.

In his objections to this first R&R, Petitioner reiterated that his appellate counsel rendered ineffective assistance by failing to argue that the manslaughter instruction constituted fundamental error, which prevented the jury from finding him guilty of a lesser-included offense. He specifically contended that his appellate counsel should have raised the issue in supplemental briefing during the eight months following the issuance of *Montgomery*, and while his second direct appeal was still pending in the Third District.

The district court agreed that no ineffective assistance occurred as a result of appellate counsel's failure to raise the instruction issue during the first appeal, which was two years before *Montgomery*'s issuance. But concluding that Petitioner's appellate counsel may have been objectively unreasonable in failing to submit supplemental briefing raising the manslaughter-by-act jury instruction issue

8

while the second appeal was pending in the Third District, the district court

referred Petitioner's ineffective-assistance claim to the magistrate judge for

reconsideration.  The district court also noted that the magistrate judge's

conclusion that the trial court's manslaughter-by-culpable-negligence instruction

cured the error was contrary to the Florida Supreme Court's recent decision in

*Haygood v. State*, 109 So. 3d 735 (Fla. 2013).

After the magistrate judge appointed counsel for Petitioner and ordered

supplemental briefing, Petitioner asserted that the trial court's manslaughter

instruction constituted fundamental error because the evidence demonstrated that

he committed an intentional act but did not intend to kill the victim, and there was

therefore no evidence supporting a verdict of manslaughter by culpable

negligence.[2]  In particular, Petitioner argued that if his appellate counsel had

challenged the 2006 manslaughter jury instruction during his second direct appeal,

his case would have been in the "pipeline" of cases that were eventually afforded

relief following the Florida Supreme Court's 2013 decision in *Haygood*.

In a supplemental R&R, the magistrate judge again recommended that the

district court deny Petitioner's § 2254 petition.  The magistrate judge concluded

that Petitioner had not preserved his claim of ineffective-assistance-of-appellate

---

[2]  We note that, to the extent Petitioner is suggesting that there was evidence that he intentionally shot his wife, but no evidence indicating any culpable negligence on his part, Petitioner's own testimony asserted that the shooting was an accident, which would appear to fit as neatly into a culpable negligence category, as into an intentional act niche.

counsel during the second direct appeal because he had raised that claim only in his objections to the R&R; and in any event, the claim was not exhausted and was thus procedurally barred. Alternatively, as to the merits, the magistrate judge determined that appellate counsel in Petitioner's second direct appeal was not deficient because counsel would have been procedurally barred from raising the manslaughter-by-act jury instruction issue given that it was not raised in Petitioner's first direct appeal, which challenged his conviction (as opposed to his second direct appeal, which followed Petitioner's resentencing hearing on remand). In short, the magistrate judge concluded that the state court properly rejected Petitioner's ineffective-assistance-of-appellate counsel claim.

Petitioner filed objections to the magistrate judge's second R&R. In its review of Petitioner's objections, the district court disagreed with the magistrate judge's conclusion that Petitioner's new objections should not be considered because they were not raised in the first objections. As noted, the magistrate judge had also concluded that appellate counsel would have been procedurally barred from challenging the manslaughter-by-act jury instruction in the second appeal following the resentencing proceeding, because Petitioner had failed to raise the instruction issue in the challenge to his conviction made in his first direct appeal in 2008. The district court, however, made no determination as to the correctness of this latter conclusion by the magistrate judge because, on the merits, the court

10

concluded that the state habeas court was not objectively unreasonable in finding that Petitioner's appellate counsel in the second appeal did not perform deficiently.[3]  Specifically, intervening appellate court decisions issued during the pendency of the second appeal had found no fundamental error under facts similar to those in this case, meaning that appellate counsel could reasonably have concluded that supplemental briefing on the *Montgomery* issue would not have been successful.

The district court issued Petitioner a certificate of appealability ("COA") on the following issue:  "[I]s [Petitioner] entitled to a writ of habeas corpus on the merits of his ineffective assistance of appellate counsel claim with respect to his counsel's performance in his Second Appeal?"

## II.  DISCUSSION

### A.    Standard of Review Under AEDPA

We review a district court's denial of a habeas petition under § 2254 *de novo*.  *Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1245 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1562 (2015).  Although we review the district court's factual findings for clear error, we review its rulings on questions of law and mixed questions of law and fact *de novo*.  *Id.*

---

[3]  The district court did conclude, however, that the state court was objectively unreasonable in finding that Petitioner suffered no prejudice as a result of appellate counsel's actions.  But, given its finding that counsel did not deficiently perform, the existence of prejudice did not warrant a ruling that counsel had rendered ineffective assistance.

11

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may only grant habeas relief on a claim that was adjudicated on the merits by a state court if the latter's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The tandem effect of the deference given generally to state court decisions under AEDPA, combined with the deferential standard applied to review of an attorney's performance when challenged as being ineffective, means that "it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *See Rambaran v. Sec'y, Fla. Dept. of Corr.*, 821 F.3d 1325, 1331 (11th Cir. 2016) (quoting *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013). "If this standard is difficult to meet, that is because it was meant to be." *Rambaran*, 821 F.3d at 1331 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

**B.    Standard of Review for Ineffective Assistance of Counsel Claim**

Petitioner asserts that the district court erred in denying his § 2254 petition because appellate counsel in his second direct appeal rendered ineffective assistance by failing to argue that the trial court's manslaughter-by-act jury

12

instruction constituted fundamental error.  To establish ineffective assistance of counsel, a § 2254 petitioner must show that (1) counsel's performance was deficient, falling below an objective standard of reasonableness and (2) the petitioner suffered prejudice as a result of the deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Because a § 2254 petitioner must establish both *Strickland* prongs to prevail on an ineffective-assistance claim, a court need not consider both prongs if the petitioner fails to show either deficient performance or prejudice.  *Cox v. McNeil*, 638 F.3d 1356, 1362 (11th Cir. 2011).

In the present case, the Third District Court of Appeal summarily denied Petitioner's habeas claim, meaning it provided no explanation of its reasoning.  *See Dorvil v. State*, 75 So. 3d 285 (Fla. 3d DCA 2011) (Table).  We interpret such a decision as a denial on the merits. *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002) (concluding that state court's summary denial of claim is considered an adjudication on the merits for purposes of § 2254(d)(1)).  Thus, the Third District's decision is entitled to the deference mandated by § 2254(d).  Further, Petitioner must show that there was "no reasonable basis" for the state court's decision.  *See Wilson v. Warden, Ga. Diagnostic Prison*, __ F.3d __, 14-

10681, manuscript op. at 14–15 (11th Cir. Aug. 23, 2016) (en banc) ("Where a state court's decision is unaccompanied by an explanation," a petitioner must show "there was no reasonable basis for the state court to deny relief." (quotations omitted)).  In short, because Petitioner does not dispute any factual findings, he can succeed on this appeal only if he shows that the state court's ruling on his habeas claim was contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(1).

"It is well established that the Supreme Court's decision in *Strickland* is the controlling legal authority to be applied to ineffective assistance of counsel claims."  *Sullivan v. DeLoach*, 459 F.3d 1097, 1108 (11th Cir. 2006) (quotations omitted); *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*.").  Under *Strickland*'s performance prong, we presume counsel's performance was "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 688–89.  And in the context of a direct appeal, appellate counsel does not have a duty to raise every non-frivolous issue, as an effective attorney will winnow out the weaker arguments, even if they have some merit.  *Philmore*, 575 F.3d at 1264.

### C.    Whether Appellate Counsel Rendered Ineffective Assistance in the Second Appeal

14

Under current Florida law, the giving of the now defunct portion of the 2006 manslaughter instruction (that is, the portion that is ambiguous as to whether intent to cause death is an element) constitutes a fundamental error, even if the defendant failed to object to the instruction at the time of trial and, under certain circumstances, even if the still-viable culpable negligence instruction was also given (as it was in this case). Thus, were Petitioner on direct appeal now on his murder conviction, he might well[4] be entitled to relief.

Petitioner, however, is not here on direct appeal of his conviction, but instead appeals the district court's "affirmance" of the state habeas court's decision rejecting Petitioner's claim of ineffective assistance of counsel. That being so, a preliminary question before us is whether appellate counsel's failure to anticipate the change in the law that subsequently occurred, and thus to file supplemental briefing on the above issue during the second appeal, constituted ineffective assistance. But the determinative question is whether the state habeas court acted contrary to clearly-established law when it concluded that appellate counsel did not render ineffective assistance by his failure to anticipate the later change in Florida law.

---

[4] For the reasons discussed *infra* at 23, we do not speak with certainty that Petitioner would be entitled to relief even now on direct appeal.

Our recent decision in *Rambaran v. Secretary, Department of Corrections*, 821 F.3d 1325, 1333 (11th Cir. 2016), which deals with the impact of the same Florida rulings and involves similar facts, answers this question. Like the case before us, in *Rambaran*, a jury had found the defendant guilty of second-degree murder under Florida law, following the giving of the 2006 instruction on manslaughter-by-act that was later struck by the Florida Supreme Court in *Montgomery*. Shortly before Rambaran filed his direct appeal, the Florida First District Court of Appeal held that giving the 2006 manslaughter-by-act instruction was error because it improperly included, as an element, an intent to kill. In addition, the error was fundamental, meaning it was reviewable even though no objection had been made. The First District certified the question underlying its ruling to the Florida Supreme Court. *Id.* at 1328.

In May 2009, the Florida Supreme Court accepted jurisdiction to decide the certified question. About a month later, Rambaran filed his direct appeal, arguing only that the guilty verdict was against the weight of the evidence and that the trial court should have granted a mistrial. While the appeal was pending, the Second District issued a decision holding that the 2006 manslaughter instruction was not error. The Second District certified its decision to the Florida Supreme Court on October 9, 2009. *Id.* at 1328

16

A couple of months later, in December 2009, the Third District, which was the circuit before which Rambaran's appeal was pending (and which happens to have been the same Florida appellate court to whom Petitioner's direct appeal was filed) held that it was not fundamental error to give the 2006 manslaughter instruction, meaning that an objection in the trial court was necessary to preserve the issue. *Id.* at 1328. Thereafter, Rambaran's attorney filed a reply brief in his appeal, but did not seek to raise any issue regarding the manslaughter instruction. *Id.* at 1329.

The Third District affirmed Rambaran's conviction in March 2010. On April 8, 2010, just one day before the mandate issued in Rambaran's case, the Florida Supreme Court issued its decision in *Montgomery,* which held that giving the 2006 standard manslaughter-by-act instruction constituted fundamental error. Notably, the Supreme Court did not address whether this error could be cured by the giving of the companion manslaughter instruction concerning the element of culpable negligence. *Id.* at 1329.

After the mandate had issued on April 9, 2010, Rambaran's attorney had until July 13 to move to recall the mandate, but he never did so. In the meantime, on June 2, 2010, the Third District held that giving the erroneous 2006 manslaughter-by-act instruction was not fundamental error if the trial court had

17

also instructed the jury on manslaughter by culpable negligence. *Id.* at 1329 (citing *Cubelo v. State*, 41 So. 3d 263, 267–68 (Fla. 3d DCA 2010)).

Within this same time period for recall of the mandate, Rambaran filed a state habeas petition in the Third District, in May 2010. He made one argument: that his appellate counsel had rendered ineffective assistance by not arguing on direct appeal that use of the 2006 standard manslaughter instruction was fundamental error. The Third District denied his claim in a one-sentence order, on October 22, 2010. *Id.* at 1329.

Thereafter, in 2012, Rambaran sought a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the Third District's denial of his state habeas petition. In February 2013, while these federal proceedings were ongoing in federal district court, the Florida Supreme Court in *Haygood v. State*, 109 So. 3d 735 (Fla. 2013) held that giving the erroneous manslaughter-by-act instruction constituted fundamental error on the facts before it, even though a manslaughter-by-culpable negligence instruction had also been given. *Rambaran*, 821 F.3d at 1329. Based on the *Haygood* decision, the federal district court granted Rambaran's § 2254 petition, concluding that his appellate counsel's failure to anticipate the change in the law and raise a *Montgomery* claim was ineffective assistance because had counsel done so, then Rambaran's appeal would have remained in the "pipeline," allowing him to later gain relief when the Florida

18

Supreme Court issued *Haygood* in 2013.  *Id.* at 1329–30.  As we explained in *Rambaran*, under the Florida "pipeline" theory, a decision announcing a new rule of law can apply retrospectively, in appropriate circumstances, to all appellants whose appeals were not final at the time the new rule was announced.  *Id.* at 1330 n.5.

On appeal by the State of the district court's decision granting the habeas petition in *Rambaran*, we reversed.  We explained that the district court should have been looking at the reasonableness of the state habeas court's denial of Rambaran's ineffective assistance claim, "but instead it bypassed that test and went straight to the reasonableness of appellate counsel's actions."  *Id.* at 1331.  In doing so, the district court failed to apply the double-deference standard mandated by § 2254 and *Strickland.  Id.*  That is, under § 2254, a federal court may grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  *Id.* at 1330.  Clearly-established law of the Supreme Court refers to that Court's "holdings, as opposed to [its] dicta."  *Id.*  As to *Strickland,* it imposes an objective standard of reasonableness, and, as noted *supra*, this double-deference standard "is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel

19

claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Id.* at 1331 (citation omitted).

Applying the above standards to Rambaran's facts, we concluded that there was no clearly-established law that would give rise to an inference that Rambaran's appellate counsel had performed ineffectively by failing to anticipate a later change in the law. We noted that the raising of the manslaughter-instruction issue at any of the pertinent times on appeal would not have afforded Rambaran relief. *Id.* at 1334. Specifically, when Rambaran's counsel filed his initial brief in the Third District Court of Appeal, only one district court of appeals (not the Third) had invalidated the jury instruction. By the time of the filing of the reply brief, two other district courts of appeal (including the Third) had held that the instruction was not erroneous. *Id.* Although the Florida Supreme Court's decision in *Montgomery* invalidating the instruction was issued prior to the deadline for requesting withdrawal of the mandate on the Third District's decision affirming Rambaran's conviction, the failure to request withdrawal of the mandate was also not unreasonable. *Id.* Specifically, *Montgomery* held only that the instruction was fundamental error. "It said nothing about whether giving that instruction was fundamental error even if the jury was also instructed on manslaughter by culpable negligence." *Id.* Appellate counsel could have reasonably concluded that Rambaran's case was distinguishable from *Montgomery* because the trial court did

20

give the culpable negligence instruction there. *Id.* "In fact, during the window of time in which Rambaran might have moved to recall the mandate, the Third District Court of Appeal made just that distinction in holding that giving the erroneous manslaughter by act instruction was not fundamental error if the trial court also instructed the jury on manslaughter by culpable negligence." *Id.*

In short, in *Rambaran*, we concluded that the law "was at best unsettled." *Id.* That being the case, and no holding of the Supreme Court clearly establishing that to perform within the wide range of reasonable professional assistance, "counsel must accurately predict how the law will turn out or hedge every bet in the hope of a favorable development," we concluded that the state habeas court had not acted unreasonably in denying habeas relief to Rambaran. *Id.*

Applying *Rambaran* to the facts in this case dictates a conclusion that the law was equally unsettled when Petitioner's appellate counsel filed his *Anders* brief, meaning that the district court correctly ruled that the state habeas court's ruling denying habeas relief to Petitioner was not contrary to, not did it involve an unreasonable application of, clearly-established federal law. As set out above, while Petitioner's second appeal, filed after his resentencing hearing, was pending before the Third District Court of Appeal, the Florida Supreme Court issued its ruling in *Montgomery* in April 2010, holding that the standard manslaughter-by-act instruction was fundamental error. That court did not, however, indicate whether

21

fundamental error would still be deemed to have occurred if the trial court had also instructed the jury on manslaughter by culpable negligence. And, as noted, a culpable negligence instruction was given in the present case.

In fact, just two months after *Montgomery*, in June 2010, the Third District ruled in *Cubelo* that there was no fundamental error if the invalid manslaughter-by-act instruction was coupled with a manslaughter-by-culpable negligence instruction. Thus, when Petitioner's appellate counsel filed an *Anders* brief in July 2010, asserting that there was no arguably meritorious issue remaining on appeal, there was in fact no meritorious issue available, as the Third District's ruling in *Cubelo* knocked the legs out of any argument that fundamental error had occurred in Petitioner's case. Further, in July 2010, no other Florida appellate court had held that the erroneous manslaughter-by-act instruction constituted fundamental error where the jury was also instructed on culpable negligence.

Indeed, even now it is unsettled whether Petitioner would even benefit from *Haygood.* In *Dawkins v. State*, 170 So. 3d 81 (Fla. 3d DCA 2015), the Third District noted the limitations of the holding in *Haygood*. Specifically, *Haygood* held that the giving of a culpable negligence instruction would not cure the error inherent in giving the invalid manslaughter-by-act instruction if "the evidence supports a finding of manslaughter to act, but does not reasonably support a finding that the death occurred due to the culpable negligence of the defendant."

22

*Dawkins*, 170 So. 3d at 82.  In *Haygood,* it was undisputed that the defendant had acted intentionally in committing the acts that led to the victim's death, meaning the evidence did not support a theory of culpable negligence.  In contrast with the dearth of evidence in *Haygood,* in *Dawkins,* there was "some evidence from which the jury reasonably could have found Dawkins guilty of manslaughter by culpable negligence." *Id.*  And a culpable negligence instruction had been given.  For this reason, the Third District concluded that no fundamental error occurred.  *Id.* at 82–83.  Similarly, in this case, Petitioner's own testimony, along with the absence of any eyewitness testimony, provided some evidence from which the jury could have inferred culpable negligence in the shooting of his wife.

At any rate, the law being as unsettled at the operative time periods in Petitioner's case as it was in *Rambaran*, we likewise conclude that the state habeas court did not act contrary to clearly-established law in denying Petitioner's habeas petition based on appellate counsel's failure to raise a *Montgomery* claim. Petitioner argues, however, that because appellate counsel filed only an *Anders* brief in the second appeal (albeit a merits brief had been filed in the first appeal), then the state habeas court's conclusion that appellate counsel did not perform ineffectively was contrary to law clearly established by the Supreme Court.

In essence, this argument by Petitioner assumes that counsel may not have performed ineffectively had he filed, in this second appeal, a second substantive

23

merits brief that identified some issue—any issue—while at the same time omitting the *Montgomery* issue.  For example, following this resentencing hearing, had counsel simply filed a brief once again challenging the sentence, then appellate counsel's failure to raise the instruction issue would not have constituted deficient performance for the reasons set out in *Rambaran*:  the law was too unsettled on that point to brand as ineffective an attorney who failed to advance the issue.  But because appellate counsel filed no merits brief identifying an unrelated issue, at least in this second go-round, then, according to Petitioner, counsel's assistance was ineffective.

As for the established Supreme Court authority in favor of this proposition, Petitioner cites to *Smith v. Robbins*, 528 U.S. 259 (2000).  In *Robbins*, the Supreme Court held that states may adopt procedures that deviate from those suggested in *Anders* for withdrawing as counsel in frivolous appeals, so long as those new procedures sufficiently protect a defendant's right to appellate counsel.  528 U.S. at 264–65.  That was the Supreme Court's holding.  *Rambaran,* 821 F.3d at 1332.

The holding that Petitioner extrapolates from *Robbins*, however, is that although appellate counsel's failure to raise a particular issue may not constitute deficient performance, given the relative lack of merit of the issue, the failure to raise this same non-meritorious issue may morph into a deficiency if appellate counsel has declined to file any brief at all on the ground that there is no non-

24

frivolous issue available. Why? Because in *Robbins*, the majority opinion predicted that "it will be easier for a defendant-appellant to satisfy the first part of the *Strickland* test" requiring deficient performance when appellate counsel has filed no brief at all than when counsel has filed a brief identifying some, but not all issues, that the defendant believes counsel should have raised.

That prediction may be accurate, but for the reasons set out in *Rambaran* when addressing another statement in *Robbins*, the statement is not a holding, but is only dictum. *Id.* at 1332–33. As to Petitioner's reliance on *Robbins*' statement that to demonstrate that appellate counsel was deficient in filing an *Anders* brief, a defendant must show "that a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief….," it is true that *Robbins* so stated the general standard. *Robbins*, 528 U.S. at 288. But we specifically held in *Rambaran* that *Robbins* cannot be read as establishing that appellate counsel "performs deficiently by failing to anticipate a change in the law…." *Rambaran*, 821 F.3d at 1332. Given that holding, we cannot read *Robbins* as clearly establishing that an attorney is not expected to anticipate a change in the law as to a particular issue only so long as he files an appellate brief that identifies other unrelated issues. The second clause of the above sentence is a *non sequitur*. Indeed, *Robbins* did not address appellate counsel's duty to anticipate changes in the law.

In summary, for the above reasons, we conclude that the district court correctly decided that the state habeas court's denial of Petitioner's habeas petition was not contrary to, nor an unreasonable application of, law clearly determined by the United States Supreme Court.  Accordingly, we affirm the district court's denial of Petitioner's § 2254 petition.

**AFFIRMED.**[5]

---

[5]  Petitioner's unopposed motion to file a reply brief out of time is GRANTED.